NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

YF BETHANNY INC, et al., *Plaintiffs/Appellees*,

*v.*

16 BETHANY STATION LLC, *Defendant/Appellant*.

No. 1 CA-CV 18-0183
FILED 2-19-2019

Appeal from the Superior Court in Maricopa County
No.  CV2015-005935
The Honorable Kerstin G. LeMaire, Judge

**AFFIRMED IN PART, REVERSED IN PART, REMANDED**

COUNSEL

Shein Phanse Adkins, P.C., Scottsdale
By David E. Shein, Todd Matthew Adkins, Erik D. Smith
*Counsel for Defendant/Appellant*

Fennemore Craig, P.C., Phoenix
By J. Christopher Gooch, Emily Ayn Ward, Patrick Irvine
*Counsel for Plaintiff/Appellee*

---

## MEMORANDUM DECISION

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Jon W. Thompson and Vice Chief Judge Peter B. Swann joined.

---

**M O R S E**, Judge:

¶1        Appellant ("Landlord") appeals from the superior court's judgment against it for breach of contract and the implied covenant of good faith and fair dealing.  Landlord argues that the superior court incorrectly determined that certain expenses did not constitute "common area costs" under the lease agreements between Landlord and Appellees ("Tenants"). Because some of the challenged expenses were not common area costs, while others were, we affirm in part, reverse in part, and remand for additional proceedings.

### FACTS AND PROCEDURAL HISTORY

¶2        Landlord owns a shopping center in Phoenix in which Tenants rent commercial space.  The lease agreements between Landlord and Tenants, which are in large part identical, provide that Tenants must reimburse landlord for "common area costs," which are defined, in relevant part, as:

> all costs and expenses incurred by Landlord in (a) operating, managing, policing, insuring, repairing and maintaining the Common Area . . . (c) operating, insuring, repairing, replacing and maintaining all utility facilities and systems including . . . storm drainage lines and systems not exclusively serving the premises of any tenant or store . . . and (d) complying with local, state and federal laws relating to the Common Areas.

The lease agreements additionally provide that "Common Area Costs shall include, without limitation, the following: Expenses for maintenance, landscaping, repaving, restriping, resurfacing, repairs, replacements, painting, [and] lighting."  Common area costs also include capital expenditures, provided that Tenants "shall only be obligated to pay for the cost of capital expenditures for replacing Common Areas based on the cost of such replacement amortized over the useful life of the Common Area

item being replaced." The lease agreement for tenant Flip Dunk Sports LLC ("Flip Dunk") additionally provides that "[n]otwithstanding anything to the contrary, Common Area Costs shall not include . . . costs for any capital repairs, replacements or improvements or equipment leases which are to be capitalized under generally accepted accounting principles."

¶3        Two years into the parties' Landlord/Tenant relationship, Landlord performed significant work on the property: curbs were taken out and moved to increase parking space and decrease landscape space; two loading docks were replaced with parking places in their stead; the western wall was torn down, moved, and increased to six feet in height, which also increased the parking space and decreased the landscape space; lampposts were replaced and some were moved to different locations; parts of the parking lot were paved, particularly where the curbs had been torn out, and a portion of the parking lot was resurfaced; an enclosure was built around the dumpster area; and the existing dry well for stormwater runoff was replaced with a retention tank. In total, this work cost around $560,000.

¶4        At the end of the year, Landlord billed Tenants for these costs, amortized and apportioned according to rental space, in the usual reconciliation report for common area costs. Tenants filed this suit, claiming that Landlord breached the leases and the implied covenant of good faith and fair dealing. Landlord counterclaimed, seeking declaratory judgment that the disputed expenses were common area costs under the leases and that YF Bethanny LLC ("YF Bethanny") is not the proper party to the lease.

¶5        After a five-day trial, the court held that the costs "were not costs for operating, managing, policing, insuring, repairing and maintaining the Common Area as set forth in Section 12.4, and as such, . . . are not Common Area Costs under Section 12.4." The court subsequently entered judgment in favor of Tenants. Landlord timely appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶6        "Contract interpretation is a question of law we review de novo." *Dunn v. FastMed Urgent Care PC*, 245 Ariz. 35, 38, ¶ 10 (App. 2018).

## I.    Common Area Costs

¶7        The superior court, quoting from the leases, held that the work expenses were not for "operating, managing, policing, insuring, repairing and maintaining" the common area.  This holding was based on the court's assessment that "Section 12.4 . . . does not include upgrades, renovations, or improvements within Common Area Costs."  While the court is technically correct that section 12.4 does not contain the words "upgrades, renovations, or improvements," the relevant question here is not whether the work was an upgrade, renovation, or improvement.  The question for most of the work is, did the work constitute "repairing and maintaining"?  As discussed below, a separate provision governs the replacement of the stormwater retention system.

¶8        In this case, most of the work expanded the parking lot and went beyond "repairing and maintaining."  By moving curbs, islands, light posts, and walls, Landlord created entirely new parking spaces.  Landlord points out that common area costs expressly includes "major parking lot repairs," but expanding the parking lot went beyond "repairs."  Likewise, common area costs do not extend to the dumpster area enclosure because that was a new feature that went beyond "repairing and maintaining."  For these reasons, the court was correct in concluding that the work performed on the parking lot and west wall did not constitute "repairing and maintaining" under the lease.

¶9        However, the stormwater drainage system is governed by a different provision of the lease agreements, which provides that common area costs include "repairing, *replacing* and maintaining all utility facilities and systems including . . . storm drainage lines and systems" (emphasis added).  The word "replacing" in this subsection has meaning.  While the superior court quoted this provision in its findings of fact, it did not analyze it in its conclusions of law.

¶10        The property manager for the shopping center testified that the existing system "wasn't adequately draining rainwater from the center," and that this drainage problem existed since at least 2011, predating the work at issue in this case.  Landlord's representative testified that water "was ponding" when it rained, and as a result, some tenants had flooding problems.  This testimony was not disputed, and the superior court made no contrary explicit findings regarding the stormwater drainage system. The new system was a retention tank, rather than a dry well, which could technically be called an "upgrade."  However, nothing in the lease agreements mandates that the new system be exactly the same as the old

one.  The costs associated with replacing the stormwater drainage system were therefore a "common area cost" under the leases.

## II.     Special Provision in Flip Dunk's Lease

¶11          Flip Dunk asserts that its lease agreement prohibits Landlord from assessing it for capitalized costs.  The superior court did not rule on this issue, but Landlord and Tenants raised it before us.  The Flip Dunk lease has a provision stating, "Notwithstanding anything to the contrary, Common Area Costs shall not include . . . costs for capital repairs, replacements or improvements or equipment leases which are to be capitalized under generally accepted accounting principles."  Landlord argues that this provision means that common area costs cannot include capital costs *unless* they are properly capitalized.  Landlord's interpretation would render this provision a mere redundancy or a clarification of earlier provisions that provide capitalized costs must be amortized.  We agree with Flip Dunk because the lease unambiguously states that "Common Area Costs shall not include . . . costs . . . which are to be capitalized."

¶12          Landlord argues that even if this provision excludes capitalized costs, Flip Dunk has agreed to pay, and is paying, roof repair costs on an annualized basis, and that allowing Flip Dunk to "cherry pick" which costs it chooses to pay has "no legal or contractual basis."  However, the lease agreement specifically allows Flip Dunk to "cherry pick" and volunteer to pay for certain repairs without waiving its rights under the entire agreement:

> Any waiver by either party of a breach by the other party of a covenant of this Lease shall not be construed as a waiver of a subsequent breach of the same covenant.  The consent or approval by either party to anything requiring such party's consent or approval shall not be deemed a waiver of such party's right to withhold consent or approval of any subsequent similar act.

Thus, regardless of Flip Dunk's agreement to contribute to roofing repairs, it is not contractually obligated under its lease to pay for the capitalized costs associated with replacing the stormwater retention system.

¶13          For these reasons, we reverse the superior court's judgment for breach of contract and breach of the implied covenant of good faith and fair dealing with regard to costs assessed to YF Bethanny that are associated with replacement of the stormwater retention tank and direct the court to enter judgment in Landlord's favor on that issue.

## III.    Proper Party

**¶14**       Landlord seeks declaratory judgment that YF Bethanny is not a proper party to the lease, and the actual tenant is Rick Berks, the promoter who signed the lease on behalf of YF Bethanny.  When Rick Berks signed the lease, YF Bethanny had not been incorporated, and Rick Berks signed the lease on behalf of "YF Bethanny Inc., an Arizona corporation." Subsequently, he created YF Bethanny Inc. as a Florida corporation, which was later converted to a limited liability company ("LLC") named YF Bethany LLC, also a Florida entity and the current party to this lawsuit. Under the ratification doctrine, an entity can ratify acts taken by its promoter before its formation.  *John Deere Co. v. First Interstate Bank of Arizona N.A.*, 147 Ariz. 256, 260 (App. 1985).  Landlord argues that the fictional entity that signed the lease never came into existence, and therefore no entity could ratify the lease agreement.

**¶15**       We disagree with Landlord's argument because "YF Bethanny Inc." did come into existence, albeit incorporated in a different state than the one indicated in the lease.  *Cf. BKWSPOKANE LLC v. F.D.I.C.*, 12 F. Supp. 3d 1331, 1337 (E.D. Wash. 2014), *aff'd sub nom. BKWSpokane, LLC v. Fed. Deposit Ins. Corp.*, 663 Fed. Appx. 524 (9th Cir. 2016) ("That description [as a Wyoming LLC] is immaterial to the transaction and simply does not invalidate the otherwise valid lease agreement, especially since [the entity's] true and proper name was used in full . . . .").  In addition, Landlord has not shown how YF Bethanny's actions constitute a material breach of the lease agreement.  *See generally Foundation Development Corp. v. Loehmann's, Inc.*, 163 Ariz. 438, 446-47 (1990) (noting the factors for determining materiality in the context of a lease agreement, including the extent to which the landlord is damaged by the breach).

**¶16**       The fact that YF Bethanny also converted from a corporation to an LLC has no bearing on whether it is now a proper party.  Under both Florida and Arizona law, an entity that converts from a corporation to an LLC remains the same entity with the same rights as obligations it had before the conversion.  Fla. Stat. Ann. § 605.1046 (entity converting to Florida LLC); Fla. Stat. Ann. § 607.1114 (Florida corporation converting to other entity); A.R.S. § 29-2406 (Arizona entities).

**¶17**       Because YF Bethanny ratified the lease after its formation, it is a proper party to the lease.

**CONCLUSION**

**¶18** We reverse the judgment of the superior court as it relates to the costs assessed to YF Bethanny for the replacement of the stormwater drainage system and remand for the superior court to enter judgment in Landlord's favor on that issue. We affirm the remainder of the judgment. The parties all asked for costs and attorney fees pursuant to A.R.S. § 12-341.01 and the lease agreements. Since neither YF Bethanny nor Landlord fully prevailed on appeal, we decline to award them attorney fees or costs. However, Flip Dunk is a successful party and as such, we award it its reasonable attorney fees and costs on appeal upon compliance with ARCAP 21.

